García, Plaintiff and Respondent, v. Brignoni et al.,
Defendants and Appellants.

## Appeal from the District Court of Aguadilla in an Action of Unlawful Detainer.

No. 1178.—Decided April 17, 1915.

Summons—Service—Return—Appearance.—When a literal copy of the return with its date as appearing on the original is not endorsed on the back of the copy of the summons by the officer serving it, the service is defective, but if the defendant appear, answer and introduce evidence although he had pleaded said defect, he submits to the jurisdiction of the court.

Unlawful Detainer—Motion to Dismiss—Notice.—A motion in writing for dismissal of a complaint in an action of unlawful detainer on the ground that more than ten days had elapsed between the date of the first appearance and the date set for the trial, may be made in open court at the beginning of the trial without the necessity of first serving notice in writing on the adverse party.

Id.—Extension of Time—Discretion of Court.—Although it is true that section 6 of the Unlawful Detainer Act provides that the proofs submitted at the first hearing ''shall be heard within a period which in no case shall exceed ten days,'' this period is not absolute and may be extended by the court under the authority inherent in its judicial powers.

Id.—Discretion of Court.—Where the discretion, if exercised, would necessarily have been unfavorable, the appellate court will not reverse the judgment appealed from.

Id.—Tenancy at Sufferance—Complaint.—The only essential allegations of a complaint in unlawful detainer at sufferance are that the plaintiff is the owner or usufructuary of certain property or entitled to its possession, or is the successor in interest of such persons, and that the defendant withholds its material possession or holds the same at sufferance without paying any rental or other consideration therefor.

Id.—Tenancy at Sufferance—Trial of Title to Real Estate.—The action of unlawful detainer is a special proceeding of a summary character the purpose of which is to recover the material possession of real property by evicting therefrom the person who may detain or hold the same at sufferance without paying any rental or other consideration, and it is not the proper action by which to try title to real property.

The facts are stated in the opinion.

*Messrs. Reichard & Reichard* for the appellants.

*Messrs. Enrique González Mena* and *Juan B. Soto* for the respondent.

Mr. Justice del Toro delivered the opinion of the court.

This is an appeal from a judgment of the District Court

of Aguadilla sustaining the complaint in an action of unlawful detainer.

Summarized, the complaint alleged that the plaintiff, whose title was recorded in the registry of property, was the owner of a certain rural property situated in the ward of Hato-Arriba of San Sebastián, "consisting of four *cuerdas,* more or less, bounded on the north by lands of León Anglada; on the east by lands of Candelario Márquez; on the west by lands of the Plata Agricultural Company, and on the south by lands of the said León Anglada," it being divided by "the highway leading to San Sebastián, on the right side of which there are three *cuerdas,* more or less, and on the left one *cuerda,* more or less," and that the defendants were occupying the said property against the will of the plaintiff without paying any rental or other consideration therefor.

The complaint having been filed, on May 9, 1914, the court ordered the parties to be summoned to appear at a preliminary hearing set for the 18th of the same month, the defendants to be cautioned in the summons that in the event of their failure to appear in person or by a lawful representative, judgment of unlawful detainer would be taken against them without further summons or hearing.

On the day set one of the defendants, widow Gil Ruiz de Font, appeared by her attorneys, Reichard & Reichard, and moved the court to quash the summons because a literal copy of the original return was not endorsed on the copy of the summons served on her, showing the date of the service and the signature of the person serving it, as prescribed by law. The court took the motion under advisement, whereupon the said defendant filed her answer and submitted her evidence, stating that she did so without prejudice to the rights that might accrue to her under the ruling on the said motion. Her counsel further said: "I wish to call attention to the fact that I represent only one of the defendants and

that the other defendant is in court and is not represented by me.''

In her answer defendant Gil Ruiz, widow of Font, denied the allegations of the complaint and in turn alleged as new matter of defense, in synopsis, that she was in possession of a rural property of three *cuerdas* in the ward of Hato-Arriba of San Sebastián belonging to Joaquín Oronoz Rodón who had acquired the property in satisfaction of an execution in his favor in a suit which he had prosecuted against the Succession of Juan E. Hernández.

On June 4, 1914, the court overruled the motion of defendant Gil Ruiz, widow of Font, to quash the summons ''because it was of the opinion that the said omission did not affect the service of the summons, all the requirements essential to the validity of such service having been complied with,'' and set June 10 for the trial. In the said ruling it is stated that at the preliminary hearing ''the parties appeared by their respective attorneys.''

On June 10, 1914, defendant Gil Ruiz, widow of Font, moved for dismissal of the complaint on the ground that more than ten days had elapsed between the date of the preliminary hearing and the day set for the trial. Said motion was made in writing and the court refused to entertain it because, as set out in the statement of the case, it was of the opinion ''that a motion cannot be made unexpectedly and without notice to the adverse party to acquaint him with its object, for one party cannot take advantage of another.''

The statement of the case also recites that on June 10, 1914, the day set for the trial, ''the plaintiff and defendant Gil Ruiz, widow of Font, appeared in person and by their attorneys, but the other defendant, Engracio Brignoni, did not appear.'' The summoning of defendant Brignoni is not shown in the transcript of the record.

At this stage the plaintiff began to introduce his evidence, consisting of:

1. A certified copy of a public deed endorsed as recorded

in the registry of property, showing that León Anglada and his wife sold to Juan Bautista García Figueroa, the plaintiff, ''a rural property situated in the ward of Hato-Arriba, San Sebastián, composed of four *cuerdas,* more or less, and bounded on the north by lands of José and León Anglada; on the east by lands of Ramón Font and Candelario Márquez; on the south by lands of Candelario Márquez, León Anglada and Ramón Font, and on the west by lands of Font and León Anglada, it being divided by the highway leading to San Sebastián, on the right side of which there are three *cuerdas,* more or less, and on the left one *cuerda,* more or less, the property containing two houses.''

2. The testimony of plaintiff García who stated, in brief, that he had bought the property referred to in the complaint, which is now occupied by the defendants although he had not rented it to them and they pay him nothing; that he acquired it about a year ago; that he does not know how long the defendants have been in possession; that when he purchased the property he was informed that it was occupied; that he personally notified the defendants to vacate the property and they answered that they were on their own land and did not recognize the witness as the owner.

3. The testimony of León Anglada, who, in synopsis, stated that he sold García the property of four *cuerdas* which is at present in the possession of the defendants who pay nothing to García; that when the witness sold the property to García the defendants were in possession of it; ''that he did not have possession of the property; that he was in possession prior to an action of unlawful detainer.''

4. The testimony of Víctor Montalvo who said that he knew that García was the owner of the property of four *cuerdas* held by the defendants.

The evidence of defendant Gil Ruiz, widow of Font, consisted of:

1. A certificate issued in San Sebastián on June 19, 1907, by Ernesto Esteve, Marshal of the Municipal Court of Añasco,

P. R., stating that by order of the said court he had sold at public auction to Joaquín Oronoz Rodón, who was the highest bidder, a rural property of three *cuerdas* situated in the ward of Hato-Arriba, San Sebastián, bounded on the north by the highway; on the south by land of Ramón Font; on the east by lands of José Castañer and Candelario de Jesús Márquez, now belonging to León Anglada, and on the west by land of Castañer, now belonging to León Anglada, the property containing two houses.

2. A certified copy of deed No. 250 of June 21, 1907, executed before Notary Juan Mercader Rodríguez in San Sebastián, by which Ernesto Esteve, Marshal of the Municipal Court of Añasco, P. R., by order of the said court and in representation of the Succession of Juan E. Hernández, sold to Joaquín Oronoz Rodón a rural property of three *cuerdas* of land situated in the ward of Hato-Arriba, San Sebastián, and bounded on the north by the highway; on the east and west by lands of León Anglada, and on the south by land of Ramón Font, now belonging to Acisclo Hernández, the property containing two houses. The said sale was, made at public auction, as stated in the certificate referred to in the preceding paragraph. Said certified copy of the deed is endorsed as recorded in the registry of property of this district on the reverse side of page 172 of volume 14 of San Sebastián.

3. The testimony of defendant Gil, who stated, in brief, that she is in possession of a property of three *cuerdas* belonging to Joaquín Oronoz situated in Hato-Arriba and bounded by the properties of Oronoz and Echeandía, the highway and lands of Anglada; that the property formerly belonged to Acisclo Hernández and prior to that to Ramón Font.

4. The testimony of Joaquín Oronoz, who, in synopsis, testified that he owns one large and one small property in Hato-Arriba; that the small property has three *cuerdas* and is bounded on the north by the highway; on the south by the

other property belonging to him, and on the east and west
by lands of Anglada; that he acquired the property of three
·*cuerdas,* which is at present in the possession of defendant
Gil Ruiz, at public auction and it was conveyed to him by
a deed which is recorded; that the property formerly con-
tained four *cuerdas,* but one *cuerda,* which is situated on
the left side of the road leading from Aguadilla to San Sebas-
tián, was bought from him by Engracio Brignoni.

5. The testimony of José Méndez Cardona, who stated,
in brief, that he knew that Oronoz was the owner of the prop-
erty of three *cuerdas* in the ward of Hato-Arriba of San Se-
bastián occupied by defendant Gil Ruiz.

The evidence having been concluded, the case was submit-
ted finally to the court, which on June 15, 1914, rendered
judgment sustaining the complaint in the manner provided
for by law. The defendants were ordered to vacate the prop-
erty and in the judgment it was stated: "After having heard
the complaint, the answer by defendant Gil Ruiz, widow of
Font, the evidence introduced at the trial and the arguments
of counsel representing the parties, the court declared the
case ready for judgment." Nothing was expressly stated
as to the appearance or non-appearance of defendant Brig-
noni.

In the brief filed by counsel for defendant Gil Ruiz, widow
of Font, who alone appealed from the judgment, it is con-
tended that the district court erred:

1. In not quashing the summons served on defendant Gil
Ruiz, widow of Font.

2. In refusing to entertain the motion made at the trial
and before the introduction of evidence for dismissal of the
complaint on the ground that the Act of Unlawful Detainer
had been violated.

3. In not dismissing the complaint on the ground set up
in the motion to which the preceding paragraph refers.

4. In not dismissing the complaint: (*a*) because it did
not state facts sufficient to constitute a cause of action; (*b*)

because the plaintiff did not identify the property of which he claimed to be the owner; (*c*) because the action of unlawful detainer is not the proper action in which to litigate the question of ownership involved in this suit; and (*d*) because the judgment rendered against Gil Ruiz, widow of Font, does not put an end to the matter.

1. Let us consider the first error. Section 92 of the Code of Civil Procedure, as enacted in 1904, does not contain the provision whose omission was made the basis of the question raised by the appellant. The said provision was added by Act No. 70 of 1911 and reads as follows: "Upon the copy of the summons being served it will be endorsed on the back by the officer serving it, with a literal copy of the service and its date as appearing on the original." See also Act No. 8 of 1915 amending said section 92.

When the defendant raised the question she exhibited the copy of the summons which had been served upon her and it shows that this statutory requirement was not complied with. This being the case, the alleged defect was evident. The violation of the law was plain. But as the defendant appeared at the hearing for which she had been summoned and filed her answer and introduced her evidence although she had pleaded the said defect, we are of the opinion that she submitted herself to the jurisdiction of the court notwithstanding the reservation she made at the time.

2. In our opinion the court committed the second error assigned. We cannot understand why it refused to entertain the motion of the defendant. Said motion was made in open court at the beginning of the trial, the adverse party being present; therefore, according to section 317 of the Code of Civil Procedure, no prior written notice to the adverse party was required.

The effect which this error may have upon the question of the reversal of the judgment appealed from depends upon the conclusion which we may reach in considering the third error assigned.

3. In our opinion, considering the motion of the defendant on its merits, it was properly overruled.

It is true that section 6 of the Unlawful Detainer Act of 1905, page 184, provides that the proofs submitted at the first hearing "shall be heard within a period which in no case shall exceed ten days," but it is also true that this provision should be construed in such a manner as to allow it to conform to the circumstances which may accompany human transactions. It is understood that certain fixed periods of time, such, for instance, as that for taking an appeal, are absolute and cannot be extended; but there are others whose very character indicates that they should be, and actually are, capable of being extended although the law is silent on that point. In the case of an appeal, the person who exercises the right may take all the necessary steps himself. It is sufficient that he deliver a notice of appeal to the secretary of the court and serve a similar notice on the adverse party or his attorney. But the matter of examining evidence is not the same. Here the court must intervene necessarily and it may be engaged in matters which require its constant attention, the judge may become ill suddenly, or the court may enter upon its regular vacation. In such cases, and in many others which might be conceived, it would be impossible to comply with the provision cited. Moreover, the purpose of the said statute is undoubtedly to secure a speedy trial of the action of unlawful detainer in benefit of the owner of the property, and it would be absurd to construe the law in such a manner that by reason of the law itself the exercise of the owner's right would not only be delayed but, at times, destroyed.

In the case of *Mas et al.* v. *Borinquen Sugar Company*, 18 P. R. R., 299, this court, in construing a similar provision contained in section 4 of the Unlawful Detainer Act, expressed itself as follows:

"Now, while the statute orders the fixing of the appearance for the first hearing within 10 days, yet the court is not deprived of its

discretion to postpone the hearing. The power to postpone resides inherently in courts and the judicial power has been invested in the courts of Porto Rico by section 33 of the Organic Act."

If we apply the foregoing doctrine to the circumstances of this case we shall see that one of the defendants submitted a question of law to the consideration of the court on May 18, 1914, when the first hearing was held, and it was not ruled on until June 4, the day set by the court for the second hearing. It is quite true that from May 18 to June 10, when the second hearing or the trial took place, more than the ten days prescribed by statute had elapsed; but it is also a fact that seventeen of the twenty-three days which had elapsed were employed by the court in considering the question raised by the same party who afterwards tried to take advantage of the lapse of time in order to defeat the action brought by the plaintiff. The latter was not to blame for the delay and to decide the question against him would be contrary to equity and justice.

In short, we are of the opinion that the action of the court in taking the question of law raised by the appellant under consideration and in not setting a day for the trial until it had disposed of the said question amounts to an implied extension of the period of ten days prescribed by section 6 of the Unlawful Detainer Act, the power to grant which was inherent in the court.

Such being the conclusion reached by us in considering the third assignment of error on its merits, the fact that the second error was committed does not justify a reversal of the judgment. In the case of *Polhemus* v. *Ann Arbor Savings Bank,* 27 Mich., 44, cited in *Mas et al.* v. *Borinquen Sugar Company, supra,* the court said: "There are some cases that hold that where the discretion, if exercised, would necessarily have been unfavorable, the appellate court will not reverse."

Let us consider the fourth assignment of error which contains four subdivisions.

4 *a.* In our opinion the complaint states facts sufficient to

constitute a cause of action. To reach this conclusion it is sufficient to consider the complaint in the light of the following doctrine laid down by this court in the case of *Coira* v. *Ortiz et al.,* 18 P. R. R., 211: ''The only essential averment of a complaint of unlawful detainer by suffrance is that the plaintiff is the owner of certain property, or its usufructuary, or is entitled to its enjoyment, or is the successor in interest of such persons, and that the defendant withholds its material possession or enjoys the same by suffrance without paying any rental or other consideration whatever.'' See also sections 1 and 2 of the Unlawful Detainer Act of 1905.

4. *b.* Although there is some discrepancy between the description of the property given in the complaint and that given in the deed by which the plaintiff appears to have acquired its ownership, we are of the opinion that, weighing the evdence as a whole, the property was sufficiently identified.

4. *c* and *d.* We have reached the deciding point in our consideration of this appeal.

The defendants in this case, according to the testimony of the plaintiff himself, always claimed that they held possession of the said tracts of land as owners. And although the plaintiff produced a title of ownership recorded in the registry of property, it is none the less true that the defendant-appellant produced another which was also recorded in the registry of property in favor of the person in whose name she held possession of the property; and the testimony of witness Joaquín Oronoz showed, as regards the other defendant, Brignoni, that he had acquired title to the tract held by him by purchase.

This being so, the error committed by the court in deciding the issue in an action of unlawful detainer is manifest and carries with it the reversal of the judgment rendered. This court has repeatedly laid down and applied the doctrine that an action of unlawful detainer is not the proper action by which to try the right of ownership of real property, but

is a special proceeding of a summary character the purpose
of which is to recover the material possession of some real
property by evicting therefrom the person who may detain or
hold the same at sufferance without paying any rental or other
consideration. *Gonce* v. *Méndez,* 7 P. R. R., 531; *Pesquera* v.
*Díaz,* 8 P. R. R., 109; *Del Valle* v. *Andreu et al.,* 11 P. R. R.,
398; *Mehrhof* v. *Rodríguez et al.,* 14 P. R. R., 56; *Elzaburu*
v. *Chaves et al.,* 15 P. R. R., 16; *Torres et al.* v. *Pérez,* 18
P. R. R., 557; *Miranda* v. *Cameron,* 19 P. R. R., 465.

We wish to make a further remark and it is concerning
defendant Brignoni. That summons was served on him does
not appear in the transcript of the record, nor is it shown
that he appeared at the first hearing, unless the statement
by counsel for defendant Gil Ruiz be deemed a sufficient show-
ing. Therefore it does not appear plainly from the record
that the court acquired jurisdiction over the person of said
defendant Brignoni.

In view of all the foregoing we are of the opinion that
the judgment appealed from should be reversed and the ac-
tion of unlawful detainer dismissed.

*Reversed.*

Chief Justice Hernández and Justices Wolf, Aldrey and
Hutchison concurred.